1
2
3
4
5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8   **GUL M. KODWAVI,**                          Case No.: 11-cv-2710-YGR

9              Plaintiff,                         **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

10        vs.

11  **INTERCONTINENTAL HOTELS GROUP**

12  **RESOURCES, INC.**, *et al.*,

13             Defendants.

14          Plaintiff Gul Kodwavi brings this action alleging national origin discrimination in

15  employment, as well as retaliation and harassment by his former employer, Defendant

16  Intercontinental Hotels Group Resources, Inc. dba Holiday Inn, Civic Center ("the Hotel"), and

17  individual defendants Gino Lazzara ("Lazzara") and Adriano LoGrasso ("LoGrasso") (collectively,

18  "Defendants").   Plaintiff's claims are alleged under 42 U.S.C. section 1981 as well as the California

19  Fair Employment and Housing Act ("FEHA").[1]

20          Defendants have filed a Motion for Summary Judgment on the grounds that Plaintiff has no

21  evidence to create a triable issue of facts on any of his claims.  On his national origin discrimination

22  claim, Defendants argue, Plaintiff cannot establish a *prima facie* case of discrimination, nor can he

23  offer facts to create a genuine dispute as to whether he was terminated for legitimate, non-

24  discriminatory reasons.  As to the claim of harassment in violation of the FEHA, Defendants argue

25  such a claim was not the subject of a timely administrative charge with the California Department of

26  Fair Employment and Housing ("DFEH"), nor does Plaintiff have evidence of conduct based upon

27

28  _____

      [1] The section 1981 and harassment claims are asserted against LoGrasso, Lazzara, and the
    Hotel, while the discrimination and retaliation claims are only asserted against the Hotel.

United States District Court
Northern District of California

his national origin that created a hostile work environment.  As to his retaliation claim, Defendants contend that Plaintiff does not have evidence that he engaged in any protected activity.  And finally, Defendants seek summary adjudication as to Plaintiff's claims for punitive damages.

Having carefully considered the papers submitted, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motion for Summary Judgment.[2]

## I.   EVIDENTIARY ISSUES

Defendants object to specific portions of Plaintiff's declaration on the grounds that it lacks foundation, lacks personal knowledge, is based upon impermissible legal conclusions or opinions, and generally does not contain admissible evidence.[3]  The Court **SUSTAINS** Defendants' objections as follows: on the grounds of impermissible legal conclusions or statements of opinion as to paragraphs 7, 23, 34, 46, 71 and 79; on the grounds of lack of foundation as to paragraphs 59, 61, 62, 63, 75, 77, 116, 124, 131; and on the grounds that the declaration contradicts his deposition testimony as to paragraph 114.  Objections to other paragraphs of the declaration are overruled.

Defendants also objected to declarations of several of Plaintiff's former co-workers on the grounds that they are improper character evidence which is irrelevant and inadmissible in connection with the motion, in addition to lacking foundation.  These declarations are nearly identical and largely addressed to the declarant's opinion of that Plaintiff is a good worker who would not engage in violence or use profanity on the job.  They are, on the whole, irrelevant, inadmissible opinion, and

---

[2] The Court vacated the hearing on this motion. (Dkt. No. 90.)

[3] Defendants filed a document entitled "Objections To Declarations Submitted By Plaintiff In Opposition To Defendants' Motion For Summary Judgment, Or Alternatively, Partial Summary Judgment."  (Dkt. No. 76.)  The Court **STRIKES** this separate objections document as filed in violation of Civil Local Rule 7-3(c) ("[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum").

Defendants also objected that the declarations of the Plaintiff and several others submitted in opposition were not signed, not dated and/or were missing pages.  In response to the objections, Plaintiff re-filed all the declarations on November 30, 2012, fixing the signature and date errors, but not changing them in substance.  (Dkt. Nos. 81-89.)  Although the new declarations were submitted without leave or explanation, in the interests of justice the Court overrules Defendants' objections to the original filings.

United States District Court
Northern District of California

improper character evidence.  Thus the objections are **SUSTAINED** and the Court has not considered these declarations.

Plaintiff objected to a number of facts included in Defendants' separate statement on grounds of relevance and impermissible opinion testimony.  Although it is not clear whether those objections are to the underlying evidence itself, the Court has reviewed the objections and finds that they are without merit.

## II.   SUMMARY OF FACTS

### A.   Plaintiff's Employment with the Hotel

Unless otherwise specified, the following facts are undisputed.  Plaintiff was born in Pakistan and moved to the United States in 1970 at the age of 18. (Declaration of Michael J. Burns [ECF No. 54], ¶ 2, Exh. 1 ("Plaintiff's Depo.") 44:20-45:4.)  Plaintiff worked at the Hotel on and off for nearly 40 years, starting in the 1970s, first as a bus boy, then as a food server.  (Plaintiff Dec. ¶¶ 4-5.)  He was a member of Unite HERE, Local 2 ("Union") and one of its shop stewards. (Plaintiff's Depo. 101:22-102:7; Declaration of Kay Chew Low ("Low Dec."), ¶ 43, Exh. 61 (collectively "Arbitration Tr.") 19:12-20.)[4]

Defendant Lazzara became the General Manager of the hotel in 1997.  Plaintiff claims that Lazzara approached Plaintiff to "reinsure" himself of his Pakistani national origin in 1997.  (Plaintiff Dec. [Dkt. Nos. 82-85] ¶ 20.)

In 2008, Defendant LoGrasso became Plaintiff's supervisor.  (Defendants' Statement of Undisputed Facts [Dkt. No. 52][5] at 4-5.)  At this time, Lazzara was still the General Manager of the Hotel and Low was the Human Resources ("HR") Director.  (SUF 6-7.)  In his declaration, Plaintiff contends that he was subject to an "unlawful discriminatory pattern of actions and conduct" that "accelerated beginning in or about 2008" when he avers that LoGrasso:

> [made] false, negative remarks about me including remarks about my clothing, my hair, he followed me where ever I went, he was always saying things in a low

---

[4] Plaintiff apparently was terminated from employment with the Hotel, and reinstated, twice before the incident that is the subject of this lawsuit.

[5] All references to Defendants' Statement of Undisputed Facts, or "SUF," refer to the fact number stated therein as well as the supporting evidence cited therein for that fact.

United States District Court
Northern District of California

voice, I could not make sense of it, when I would go to the kitchen to obviously get food for guests, he would badger me by asking what I was doing, why was I not in the dining room, on occasions when I was taking food for guests from the kitchen to the dining room, he would intentionally block my entrance into the dining room by closing the door in front of me, although I continued to complain to Kay Chew Low, Director of Human Resources, about LoGrasso's continuing hostility, actions and conduct against me, she never took any action to stop him.

(Plaintiff Dec. ¶ 22.)

**B.     Defendants' Version of Events on May 26, 2009**

The parties disagree about what happened on the evening of May 26, 2009.  According to Defendant, on the evening of May 26, 2009, LoGrasso observed Plaintiff about to uncork a bottle of wine at the bar. (Declaration of Adriano LoGrasso [ECF No. 55] ¶ 4; Declaration of Kay Chew Low Dec., Exh. 61 ["Arbitration Tr.," ECF No.53-7] at 36:5- 37:9, 55:9-13; Declaration of Michael J. Burns, Exh. 1 ["Plaintiff's Depo.," ECF No. 54-1] at 459:3-20, 464:23-466:6.)  LoGrasso asked Plaintiff, "Aren't you supposed to open the wine at the table?" (LoGrasso Dec. ¶ 4; Plaintiff's Depo. 460:2-25.)  Plaintiff ignored LoGrasso's question, walked away, and delivered the bottle of wine to the guest who ordered it.  (Plaintiff's Depo. 460:2-25; LoGrasso Dec. ¶ 4.)  About 20 minutes later, Plaintiff approached LoGrasso on the dining room floor and said, "Look at this place.  It is a fucking mess.  I'll do my job and you do your job." (LoGrasso Dec. ¶ 4; Arbitration Tr. 137:10-23 and ER Exh. 9.)  LoGrasso ignored the comment and continued about his duties.  (LoGrasso Dec. ¶ 4; Arbitration Tr. 139:6-140:9, 174:10-175:24; ER Exh. 9.)

Later in the evening, LoGrasso entered the kitchen and saw a half-empty bottle of wine at the waiters' station, which was unusual because restaurant policy was to return such bottles to the bar. (LoGrasso Dec. ¶ 5; Arbitration Tr. 140:10-142:7; ER Exh. 9.)  Believing the bottle to be the same one Plaintiff had served earlier in the evening, LoGrasso asked Plaintiff why the bottle was in the kitchen. (SUF 74.) Plaintiff said he did not know and told LoGrasso to dispose of the wine, which LoGrasso began to do. (LoGrasso Dec. ¶ 5; Arbitration Tr. 157:13-17, 179:1-24.)  At that point, Plaintiff advanced towards LoGrasso and said, "stop asking me stupid fucking questions you mother-fucker." (LoGrasso Dec. ¶ 5; Arbitration Tr. 141:19-142:24; ER Exh. 9-10, 13.)  He "grabbed [LoGrasso's] waist, pulled LoGrasso towards him, and threatened him by saying, 'I know [] why you

United States District Court
Northern District of California

1  got your job here.  You dumb motherfucker, you don't know shit.  I am going to get you.'"

2  (LoGrasso Dec. ¶ 5; Arbitration Tr. 142:10-24, 143:21-144:11, 159:3-6; ER Exh. 9-10.)

3      LoGrasso went to his office and called Luke Cerny, the Assistant General Manager,

4  informing him that he had just been physically assaulted by Plaintiff.  (SUF 8, 10.)  LoGrasso told

5  Cerny that Plaintiff "hit him in the back by putting his arm around him and restrict[ing] his waist"

6  and threatened him.  (Declaration of Luke Cerny  [ECF No. 56], ¶ 4; LoGrasso Dec. ¶ 6; Arbitration

7  Tr. 214:17-21; ER Exh. 10; *see also* Arbitration Tr. 146:10- 21, 150:22-151:2, ER Exh. 10.)  Cerny

8  advised him to write up a report detailing Plaintiff's conduct, to contact the Manager on Duty

9  ("MOD"), and to suspend Plaintiff pending an investigation.  (SUF 9.)

10      That same evening, LoGrasso called Low, the Human Resources Director, at home and told

11  her about the incident.  (SUF 9.)  He told Low that Plaintiff called him a "motherfucker," grabbed his

12  waist, and held him while threatening him.  (Low Dec. ¶ 11-12, Exh. 22.)  Low perceived that

13  LoGrasso was "talking very fast," was "not calm," was "very upset" and was "scared."  (SUF 11.)

14  Low instructed LoGrasso to notify the MOD for assistance escorting Plaintiff out of the Hotel, to

15  suspend Plaintiff pending an investigation, and to prepare a written report of the incident. (SUF 12.)

16      LoGrasso prepared a Disciplinary Action Form suspending Plaintiff pending further notice.

17  (SUF 13.)  He then met with Plaintiff, the MOD, and bartender Alex Arriola in his office. (LoGrasso

18  Dec. ¶ 9; Arbitration Tr. 147:19-148:9; ER Exh. 9; Plaintiff's Depo. 484:2-485:14.)  LoGrasso read

19  the Disciplinary Action Form to Plaintiff and informed him that he was being suspended pending an

20  investigation for using profanity towards a manager, violating the Hotel's Standards of Conduct, and

21  for being insubordinate. (SUF 14.)  Plaintiff refused to sign the Disciplinary Action Form and was

22  escorted off the property by the MOD. (LoGrasso Dec. ¶ 9.)  Once Plaintiff left the property,

23  LoGrasso prepared a full report of the incident. (SUF 15.)

24      **C.      Plaintiff's Version of Events of May 26, 2009**

25      Plaintiff, for his part, recites a significantly different version of events on the last night he

26  worked.  Plaintiff says that it was a very busy evening and he was setting tables when LoGrasso

27  "passed me twice telling me that he would get me that evening."  (Plaintiff's Dec. ¶ 31.)  One table

28  ordered a bottle of red wine which Plaintiff got from the bar.  LoGrasso followed Plaintiff to the bar,

United States District Court
Northern District of California

1  asking him why he was opening the bottle there instead of at the table as is normal.  (*Id.* ¶ 32.)

2  Plaintiff says he explained to LoGrasso that a bottle the day before had had a black cork, so he was

3  checking the bottle first by opening it halfway.  (*Id.* ¶ 31.)  Plaintiff denies saying to LoGrasso that

4  the place was a "fucking mess," and says that LoGrasso lied about Plaintiff ever touching him or

5  using profanity.  (*Id.* ¶¶ 35-36.)  Instead, Plaintiff insists that he told LoGrasso to stop harassing him

6  and that he would go to the EEOC if he did not stop.  (*Id.* ¶ 36.)  Plaintiff avers that he never engaged

7  in any of the misconduct falsely charged by LoGrasso or anyone else on May 26, 2009, or at any

8  other time, and therefore there was no reason for LoGrasso's issuance of a disciplinary action form.

9  (*Id.* ¶ 42.)  Plaintiff says he refused to sign the disciplinary form because he was being accused

10  falsely of using profanity and being insubordinate.  (*Id.* ¶ 43.)

11          **D.**       **Investigation by Low**

12         Low returned to work on May 28, 2009, and began an investigation. (Low Dec. ¶ 13.)  She

13  spoke with Plaintiff by telephone around 9:35 a.m., listened to his account of what occurred on the

14  evening of May 26, 2009, and asked him to email her a statement of what happened.  (SUF 18; *see*

15  *also* Low Dec. ¶ 13.)  Plaintiff sent Low an email in which he denied assaulting or cursing at

16  LoGrasso. (SUF 19-20.)  After she received Plaintiff's e-mail, Low asked a number of follow-up

17  questions, including whether Plaintiff knew of any witnesses to what occurred.  (Low Dec. ¶ 15.)

18  When Low next spoke with Plaintiff on June 1, 2009, he refused to identify any witnesses or

19  participate in the investigation. (SUF 23.)

20         As part of her investigation, Low contacted the Company's payroll department and identified

21  all Food and Beverage employees that were working on the evening of May 26, 2009. (SUF 24.)

22  After speaking with all of these employees — more than 20 in total — Low determined that Room

23  Service Server Laura Rodriguez was the only employee who witnessed the incident. (SUF 25, 27.)

24         Low first spoke with Rodriguez on May 28, 2009.  (SUF 26.)  Rodriguez confirmed that she

25  witnessed the discussion about the bottle of wine, after which Plaintiff delivered a cup of coffee to a

26  guest in the restaurant. (Low Dec. ¶ 18, Exh. 28.)  When Plaintiff returned to the kitchen, he

27  approached LoGrasso near the busser station.  (Low Dec. ¶ 18, Exh. 28.)  Although Rodriguez could

28  no longer hear their discussion, she witnessed Plaintiff put his arm around LoGrasso.  (SUF 28.)  To

United States District Court
Northern District of California

confirm her understanding of Rodriguez's statements, Low asked Rodriguez to demonstrate the physical contact she witnessed. (Low Dec. ¶ 18, Exh. 28.)  With Low playing the part of LoGrasso, and Rodriguez playing the part of Plaintiff, Rodriguez reenacted the event. (SUF 29.)  She wrapped her arm around Low's waist. (*Id.*)  The following week, Low met with Rodriguez to obtain a written statement. (Low Dec. ¶ 32, Ex 51.)  During this meeting, Low asked Rodriguez again to reiterate and to demonstrate what she witnessed. (*Id.*)  Rodriguez again demonstrated the physical contact she witnessed, reenacting the event with Low.  (SUF 31.)  Rodriguez wrapped her arm around Low's waist. (*Id.*)  Rodriguez prepared a written statement confirming her account of what occurred on the evening of May 26, 2009. (SUF 30.)[6]

In addition to interviewing Plaintiff and Rodriguez, and obtaining written statements from them, Low interviewed LoGrasso and reviewed his report of the incident. (Low Dec. ¶ 19.)  She also obtained statements from other employees who were working on May 26, 2009. (SUF 25; Low Dec. ¶¶ 20-31, 33-36, Exh. 31-50, 53-59.)

Based on Low's interviews of LoGrasso, Plaintiff, and Rodriguez, her review of the written reports and statements, and her assessment of the witnesses' credibility, Low concluded that Plaintiff acted aggressively and made unwelcome physical contact with LoGrasso.  (SUF 33.)  Low determined that this conduct constituted a violation of both the Hotel's Standards of Conduct and its "zero tolerance" Workplace Violence Policy.  (SUF 34.)

Low also understood the conduct to be the latest in a series of past incidents involving similar conduct for which Plaintiff was disciplined by the Hotel.  (*See* Low Dec. ¶9, Exh. 9-21.)  As the Hotel's HR Director, Low knew that Plaintiff had been disciplined several times for disregarding company policies and procedures, using inappropriate and abusive language, and engaging in several instances of physical violence. (SUF 32.)  Low was aware of prior disciplinary actions against Plaintiff including:

- August 12, 1974 - Plaintiff was given a written warning for throwing his tip back at a customer;

---

[6] Plaintiff argues that Rodriguez was coerced to change her statement of the events that occurred on May 26, 2009 by Low.  Plaintiff offers no evidence to support this conclusory allegation.

United States District Court
Northern District of California

- April 29, 1975 - Plaintiff put on a month's probation for confronting dining room guests in the gift shop because they did not include a gratuity in their check;

- November 1, 1975 - Plaintiff was given a written warning for intimidating a guest concerning payment of a gratuity;

- October 6, 1978 - Plaintiff was written-up for using profanity in the workplace;

- December 19, 1980 – Plaintiff was terminated due to an altercation with Food & Beverage Director Larry Shih.  When Shih spoke to Plaintiff about a guest complaint, Plaintiff became angry, picked up a bottle of wine, and hit Shih on the head.  Though Plaintiff's employment was terminated, he was subsequently reinstated;

- August 26, 1987 – Plaintiff was terminated after a physical altercation with Food & Beverage Director George Martin in which it was found that Plaintiff punched Martin in the face. Again, although Plaintiff's employment was terminated, he was later reinstated.

- May 5, 2005 - Hotel Controller Angie Chuan reported that Plaintiff barged into her office and began screaming at her regarding an issue with his tips, telling her to "shut up;"

- February 19, 2008 – Plaintiff was verbally counseled after he engaged in a verbal altercation with an engineer who was fixing the refrigerator in the restaurant in which Plaintiff called the engineer a "motherfucker" and a "bitch."

- May 14, 2008 - Food & Beverage Director Adnan Zaka reported that Plaintiff had used abusive language speaking to Zaka in front of a customer, yelling "what do you think you are big shit here" and "get the fuck out of my face" while Zaka was trying to resolve situation with a large tour group.

(Low Dec. ¶ 9, Exh. 9-21; SUF 32.)[7]

---

[7]  Plaintiff denies that many of these incidents occurred and claims not to have received the write-ups that are the exhibits to Low's declaration.  Plaintiff's declaration specifically seeks to counter the write-up concerning George Martin, stating that he filed suit alleging discrimination and retaliation against Martin, the complaint was dismissed without any determination on the merits, and he was reinstated by the Hotel.  (Plaintiff's Dec. ¶¶ 12-17.)  Defendants object that this evidence is irrelevant.  Neither the truth of the statements in the disciplinary write-ups nor the truth of the allegations of the prior lawsuit is at issue in this litigation.  The prior incidents are relevant only to the Hotel's investigation and good faith basis for termination with respect to the May 2009 incident. The objections to the write-ups, and to Plaintiff's declaration on this point, are both overruled.

United States District Court
Northern District of California

1    Accordingly, Low recommended to Lazzara that the Hotel terminate Plaintiff's employment.

2    (SUF 35.)  After consulting with the Hotel's corporate Director of Labor Relations, David

3    Schweitzer, Lazzara approved the termination.  (SUF 36.)  On June 5, 2009, Low informed Plaintiff

4    that his employment had been terminated and provided him with a separation notice.  (SUF 38.)

5       **E.       Grievance and Arbitration**

6       Pursuant to the CBA, Plaintiff grieved the basis of his termination, and an arbitration was

7    held before a neutral third-party decision maker, Norman Brand (the "Arbitrator").  (SUF 40-41.)[8]

8    The issue before the Arbitrator was whether "just cause" existed for terminating Plaintiff's

9    employment based on the May 26, 2009 incident.  (SUF 45.)  The arbitration lasted three days.  (SUF

10   42.)  Plaintiff was represented by counsel.  (SUF 44.)  Plaintiff testified and denied assaulting,

11   cursing at, or threatening LoGrasso, and instead claimed that LoGrasso was simply "harassing" him.

12   (SUF 46.)  Notably, Plaintiff and his union did not contest the thoroughness or impartiality of Low's

13   investigation during the course of the arbitration.  (SUF 47.)  In total, the Arbitrator heard from eight

14   witnesses and received 26 exhibits.  (SUF 49.)

15      On March 31, 2010, the Arbitrator denied Plaintiff's grievance and issued a 10-page Award

16   & Opinion concluding that the Hotel had "just cause" to terminate Plaintiff's employment.  (SUF

17   50.)  First, the Arbitrator found that Plaintiff "was not a reliable witness" because his testimony was

18   inconsistent, his responses on cross-examination were evasive, and his "version of events was highly

19   improbable." (Low Dec. ¶ 44, Exh. 62 at 7.)  Second, the Arbitrator found substantial evidence

20   strongly suggested that Plaintiff "grabbed and threatened his manager" in violation of the Hotel's

21   Standards of Conduct and Workplace Violence Policy.  (*Id.* at 9.)  Third, the Arbitrator found that

22   "the Union failed to show other employees who engaged in like behavior were treated differently"

23   because there was no evidence that other employees engaged in "similarly threatening behavior."

24   (*Id.*)

25

26      [8]  Plaintiff objects to the relevance of the arbitration proceedings and determination.  (*See*
Plaintiff's Response to Defendants' Separate Statement, Dkt. No. 68, Nos. 41-49.)  As stated below,
27   while the arbitration decision is not binding, it is relevant evidence concerning the Hotel's
termination decision.  And while Plaintiff argues that the arbitration evidence is inadmissible because
28   the union did not represent him adequately, he apparently never made a complaint against the Union
about his representation.  That objection is overruled.

United States District Court
Northern District of California

1   Plaintiff filed a charge of discrimination with the California Department of Fair Employment

2   and Housing ("DFEH") on June 7, 2010, alleging that he was subjected to discrimination,

3   harassment, and retaliation by LoGrasso and Lazzara.  (SUF 51.)

4   **III.   APPLICABLE LEGAL STANDARDS**

5   **A.   Summary Judgment Generally**

6   A party seeking summary judgment bears the initial burden of informing the court of the

7   basis for its motion, and of identifying those portions of the pleadings and discovery responses

8   that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477

9   U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.

10   *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

11   "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the

12   nonmoving party.

13   On an issue where the nonmoving party will bear the burden of proof at trial, the moving

14   party can prevail merely by pointing out to the district court that there is an absence of evidence

15   to support the nonmoving party's case.  *Celotex*, 477 U.S. at 324-25; *Soremekun v. Thrifty

16   Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets its initial burden, the

17   opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the

18   motion.  *Anderson*, 477 U.S. at 250; *Sorumken*, 509 F.3d at 984; *see also* FRCP 56(c), (e).  The

19   opposing party's evidence must be more than "merely colorable" but must be "significantly

20   probative."  *Anderson*, 477 U.S. at 249-50.  Further, that party may not rest upon mere allegations or

21   denials of the adverse party's evidence, but instead must produce admissible evidence showing there

22   is a genuine dispute of material fact for trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210

23   F.3d 1099, 1102-03 (9th Cir. 2000).  Disputes over irrelevant or unnecessary facts will not preclude a

24   grant of summary judgment.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

25   630 (9th Cir. 1987).

26   Nevertheless, when deciding a summary judgment motion, a court must view the evidence

27   in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

28   *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).  A

United States District Court
Northern District of California

district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial.  *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); FRCP 56(c).  Further, it is not a court's task "to scour the record in search of a genuine issue of triable fact" but is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted); *see also Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.")

### B.       Discrimination Claims—*McDonnell-Douglas* Burden Shifting Analysis

In a disparate treatment case, the plaintiff must show that intentional discrimination was the determinative factor in the adverse employment action.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).  There are two ways of proving intentional discrimination: direct evidence and indirect or circumstantial evidence, invoking the analysis set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Direct evidence is evidence that proves the fact of discriminatory animus without inference or presumption.  *Godwin v. Hunt Wesson. Inc.,* 150 F.3d 1217, 1221 (9th Cir. 1998).  Because of the similarity between California and federal employment discrimination laws, courts deciding FEHA claims look to pertinent federal precedent and apply the *McDonnell-Douglas* analysis.  *Guz v. Bechtel Nat'l Inc.,* 24 Cal.4th 317, 354 (2000).

Under the *McDonnell-Douglas* framework, the burden of production first falls on the plaintiff to make out a *prima facie* case of discrimination.  He may do so by showing that: (1) he belongs to a protected class, (2) he was performing the job satisfactorily; (3) he was subjected to an adverse employment action; and (4) similarly situated individuals outside of his protected class were treated more favorably.  *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993); *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1122 (9th Cir. 2004).  If the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the employer, who must present evidence sufficient to permit the factfinder to conclude that the employer had a

United States District Court
Northern District of California

1  legitimate, nondiscriminatory reason for the adverse employment action.  *St. Mary's Honor*

2  *Center,* 509 U.S. at 506-07.

3        If the employer does so, the plaintiff must demonstrate that the employer's articulated

4  reason is a pretext for unlawful discrimination by either directly persuading the court that a

5  discriminatory reason more likely motivated the employer or indirectly by showing that the

6  employer's proffered reason is unworthy of credence.  *Texas Dep't of Community Affairs v.*

7  *Burdine,* 450 U.S. 248, 256 (1981); *see also Aragon v. Republic Silver State Disposal. Inc.,* 292

8  F.3d 654, 658-59 (9th Cir. 2002) (*en banc*).   To establish pretext, very little direct evidence of

9  discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to be

10 "specific" and "substantial."  *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998);

11 *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006) (merely

12 denying the credibility of defendant's proffered reason for the challenged employment action or

13 relying solely plaintiff's subjective beliefs that the action was unnecessary are insufficient to show

14 pretext); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) ("a plaintiff cannot defeat

15 summary judgment simply by making out a *prima facie* case" to show pretext or "denying the

16 credibility of the [defendant's] witnesses") (internal citations omitted) (alteration in original).

17       The ultimate burden of persuasion on the issue of actual discrimination remains with the

18 plaintiff.  *Guz*, 24 Cal. 4th at 356 (citing *St. Mary's Honor Center,* 509 U.S. at 518).  "If the

19 employer presents admissible evidence either that one or more of plaintiff's *prima facie*

20 elements is lacking, or that the adverse employment action was based on legitimate,

21 nondiscriminatory factors, the employer will be entitled to summary judgment unless the

22 plaintiff produces admissible evidence which raises a triable issue of fact material to the

23 defendant's showing."  *Caldwell v. Paramount Unified School Dist,* 41 Cal. App. 4th 189, 203

24 (1995) (citing *Burdine*, 450 U.S. at 255, n.8).

25       //

26       //

27       //

28       //

United States District Court
Northern District of California

IV.   **DISCUSSION**

    **A.   FEHA National Origin Discrimination**

        *1.   Prima Facie Case*

    Plaintiff cannot establish a *prima facie* case of discrimination.  Establishing a *prima facie* case requires evidence that: (1) Plaintiff belongs to a protected class, (2) was performing his job satisfactorily; (3) was subjected to an adverse employment action; and (4) similarly situated individuals outside of his protected class were treated more favorably.  *St. Mary's Honor Center,* 509 U.S. at 506; *McGinest,* 360 F.3d at 1122.  "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).  When disciplinary action is involved, a "legitimate comparator" would be another employee who allegedly engaged "in problematic conduct of comparable seriousness," but was treated differently.  *Id.*; *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 744 (9th Cir. 2004); *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) ("The employees need not be identical," but "they must be similar in all material respects.")

    While Plaintiff belongs to a protected class (Pakistani national origin) and he was terminated, he cannot establish that he was performing his job satisfactorily or that others outside his protected class were treated more favorably.  *St. Mary's Honor Center,* 509 U.S. 506.  Plaintiff was terminated because he was determined to have violated the Hotel's standards of conduct and workplace anti-violence policy in a confrontation with his supervisor.  This is not satisfactory performance.  Further, Plaintiff offers no evidence to suggest that others similarly situated were treated more favorably than he was.  Indeed, the Arbitrator's "just cause" finding was based, in part, a determination that Plaintiff "failed to show other employees who engaged in like behavior were treated differently" because he "cited no similarly threatening behavior by any other employee." (Low Dec. ¶ 44, Exh. 62 at 9.)  As in the arbitration, Plaintiff has failed to offer such evidence here.

    Thus, despite the relatively low burden required to establish a *prima facie* case, Plaintiff has failed to marshal evidence to create a triable issue.  Even assuming he had offered that minimal evidence, his claims founder under the remainder of the *McDonnell-Douglas* analysis.

13

United States District Court
Northern District of California

### 2.   The Hotel's Legitimate, Non-Discriminatory Reasons

Defendants offer evidence of a legitimate, non-discriminatory reason for terminating Plaintiff, namely that Low's investigation led her to conclude that Plaintiff had threatened LoGrasso and violated company policy when he assaulted, cursed at, and threatened LoGrasso on May 26, 2009.  (SUF 33-38).

Plaintiff's arguments focus on whether or not he actually threatened or assaulted LoGrasso, but the truth of that matter is not relevant to whether the Hotel had a legitimate, non-discriminatory basis for terminating him.  Instead, the key inquiry is whether the Hotel had a good faith belief in the basis for the action it took.  *Cotran v. Rollins Hudig Hall Intern., Inc.*, 17 Cal.4th 93, 95-96 (1998); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) ("In judging whether [the employer's] proffered justifications were 'false,' it is not important whether they were objectively false (*e.g.*, whether [the employee] actually lied" but "whether the employer honestly believed its reason for its actions"); *see also Holmes v. Tenderloin Hous. Clinic, Inc.*, 772 F. Supp. 2d 1074, 1092 (N.D. Cal. 2011) ("The issue is not whether THC was correct in concluding that Holmes engaged in this misconduct and that it warranted his termination, but instead whether THC had a reasonable basis for those determinations in the investigation record it developed.").

Here, the evidence is that Plaintiff was terminated after Low conducted a thorough investigation, speaking to scores of witnesses, and reviewing Plaintiff's entire personnel file.  Low concluded that Plaintiff acted aggressively toward, and made unwelcome physical conduct with, his supervisor, LoGrasso, after a confrontation between them in the course of their work at the Hotel. (SUF 17-38, 50.)  Based on that investigation, Low and Lazzara concluded that Plaintiff violated the Hotel's standards of conduct and workplace anti-violence policy and should be terminated.  (SUF 33-36, 38.)

Moreover, there is added evidence supporting the Hotel's decision in the form of the arbitration decision that found "just cause" for Plaintiff's termination, which tends to support the reasonableness of Defendants' belief in the legitimate, non-discriminatory reasons it offered for that termination.  (SUF 50.)  While "the arbitration cannot be used … to defeat a *prima facie* case of [national origin] discrimination, it can be used to support defendant's assertion of a legitimate, non-

14

1   discriminatory reason for firing plaintiff and to defeat plaintiff's claim of pretext." *Smith v. United*

2   *Parcel Serv.*, C 03-04646 CRB, 2006 WL 733467 (N.D. Cal. Mar. 22, 2006); *see also Collins v. New*

3   *York City Transit Authority,* 305 F.3d 113, 119 (2d Cir.2002) (holding that where an arbitrator's

4   decision upholding a termination is based on substantial evidence, a Title VII plaintiff must present

5   strong evidence that the decision was wrong as a matter of fact in order to survive a motion for

6   summary judgment).  The arbitrator's finding of just cause therefore bolsters the Hotel's showing

7   that it conducted a reasonable investigation and had legitimate reasons for Plaintiff's termination.

8   Thus the evidence offered by the Hotel shifts the burden back to Plaintiff to show that this reason is

9   pretextual.

10          *3.      Evidence of Pretext*

11          Because Defendant has articulated legitimate, non-discriminatory reasons for the alleged

12   adverse employment actions, Plaintiff must demonstrate the reasons are a pretext for unlawful

13   discrimination by showing that those reasons are unworthy of credence.  *Aragon,* 292 F.3d at 658–59

14   (plaintiff must persuade "the court that a discriminatory reason more likely motivated the employer

15   or … [show] that the employer's proffered explanation is unworthy of credence"); *St. Mary's Honor*

16   *Center,* 509 U.S. at 510–511 (presumption of discrimination "simply drops out of the picture" when

17   defendant articulates legitimate, nondiscriminatory reasons).  In the absence of direct evidence of

18   discriminatory animus, circumstantial evidence establishing the employers' reasons are a pretext for

19   discrimination must be specific and substantial.  *Godwin,* 150 F.3d at 1222.

20          Here, Plaintiff's evidence of pretext is neither specific nor substantial.  Plaintiff attacks the

21   credibility of Low and LoGrasso, but offers little more than general and conclusory statements that

22   they are not to be believed.

23          As to Low, Plaintiff argues that her investigation was a sham.  As a preliminary matter,

24   Plaintiff testified in his deposition that he has no personal knowledge of Low's investigation, no

25   personal knowledge of who was interviewed as part of the investigation, and no personal knowledge

26   of the documents that were gathered during the investigation.  (SUF 39)  Plaintiff admitted that Low

27   never exhibited any bias toward Pakistanis during his employment with the Hotel.  (SUF 55)

28   Plaintiff argues that the investigation should, nevertheless be disregarded for several reasons.  First,

United States District Court
Northern District of California

15

1   Plaintiff argues that Low's investigation should be disregarded because the statements she received

2   from Rodriguez, the only eyewitness, were coerced.  Plaintiff offers nothing but his own speculation

3   and conjecture for the notion that Rodriguez's statements were coerced.  Indeed, Plaintiff admits that

4   Rodriguez told Low *and* testified at the Arbitration that she witnessed Plaintiff approach LoGrasso

5   and wrap his arm around LoGrasso's waist.  (SUF 28-29; Arbitration Tr. 66:20-67:9).

6        Second, Plaintiff also argues that the investigation should not be considered because Low is

7   not credible.  Plaintiff's basis for questioning Low's credibility is his allegation that she facilitated

8   her husband's hiring by the Hotel, against Hotel rules.  Plaintiff has no evidence to support this

9   statement other than his belief and conclusion; he offers no foundation for this statement.  Further, it

10  has no bearing on whether Low's investigation was a sham or a cover for an alleged discriminatory

11  motive for his termination.

12       Third, Plaintiff argues that Low's investigation cannot be considered because she refused to

13  address or respond to complaints he made about LoGrasso's conduct toward him.  Plaintiff's

14  complaints were that his supervisor scrutinized his work and "harassed" him.  Plaintiff offers no

15  evidence to suggest that his complaints to Low included allegations of harassment *on account of his*

16  *national origin* (or any other protected status).  To the extent that Plaintiff is implying that

17  LoGrasso's complaints were investigated but his were not, the circumstances of the May 26, 2009

18  incident differ radically from his alleged complaints.

19       While the confrontation that led to Plaintiff's termination was with his supervisor, LoGrasso,

20  Plaintiff's evidence of LoGrasso's possible discriminatory animus toward him is *de minimus,* at best.

21  Plaintiff offers evidence that LoGrasso referred to him as "You stupid Pakistani" once, and also

22  asked him ten times over the course of several years if he was from Pakistan.  These comments,

23  without more, are not sufficient to allow a reasonable jury to find that the Hotel's reasons for

24  terminating Plaintiff were really a pretext for discrimination on the basis of national origin.[9]

25  _____

26       [9]  In opposition, Plaintiff offers declarations from his former co-workers indicating that they
     witnessed LoGrasso making "provocative, humiliating comments about Mr. Kodwavi's

27  performance."  (ECF No. 60-64).  However, the declarations are conclusory and lacking in a factual
     context for the opinions offered.  Moreover, they do not to give rise to an inference that Plaintiff was

28  treated differently from similarly situated employees, or that LoGrasso's treatment of him was on
     account of his national origin.

United States District Court
Northern District of California

1    It is Plaintiff's burden to demonstrate that the Hotel's articulated reasons for his

2  termination are a pretext for unlawful discrimination. *Burdine,* 450 U.S. at 256; *Aragon,* 292

3  F.3d at 658-59. Merely denying the credibility of the Hotel's witnesses, or submitting a

4  declaration with a blanket denial of the Hotel's evidence, is not enough to establish pretext and

5  avoid summary judgment. *See Cornwell*, 439 F.3d at 1028 n.6; *Wallis*, 26 F.3d at 890-91. Plaintiff

6  has failed to carry that burden and summary judgment on his national origin discrimination claim is

7  appropriate. Therefore, the motion is **GRANTED** as the FEHA Discrimination claim.

8    **B.    FEHA Harassment**

9    Defendants argue that Plaintiff's national origin harassment claim fails on two grounds: (1)

10  the claim is time barred, as any incidents about which Plaintiff complaints occurred more than one

11  year before his complaint was filed; and (2) the incidents do not constitute harassment, regardless.

12  On the statute of limitations argument, Plaintiff asserts that the Hotel's termination was the final act

13  in a continuous course of harassing conduct, which allows him to avoid the time bar under the

14  continuing violations doctrine.

15    Defendants have established that they are entitled to summary judgment of the claim on its

16  merits.[10] Taking the evidence in the light most favorable to Plaintiff, the incidents here are not

17  sufficiently pervasive or severe as to constitute illegal harassment based upon Plaintiff's national

18  origin.

19    To prevail on his harassment claims, Plaintiff must show that: (1) he was subjected to verbal

20  or physical conduct because of his national origin; (2) the conduct was "unwelcome"; and (3) "the

21  conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and

22  create an abusive work environment." *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir.

23  2002) (citing *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998)). An "employee claiming

---

24

25    [10] As to the statute of limitations, Defendants argue that the last act of harassment would have
      to have occurred no later than the last day that Plaintiff was *at work,* and would not include his
26    termination, a "discrete act" that is separately actionable. Since Plaintiff's last day of work was May
      26, 2009 (even though his actual termination was June 5, 2009), that last day was more than a year
27    before his charge was filed with the DFEH on June 7, 2010, and therefore the claim would be time-
      barred. Plaintiff argues that the termination was the culmination of the harassment. Termination,
28    even if a "discrete act," is not necessarily excluded from the continuing violation period. This is not
      a good basis for summary judgment of this claim.

United States District Court
Northern District of California

harassment based upon a hostile work environment must demonstrate that the conduct complained of was *severe enough or sufficiently pervasive* to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006) (emphasis in original); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). An employee "generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial." *Lyle*, 38 Cal. 4th at 283; *see also Brennan v. Townsend & O'Leary Enterprises, Inc.*, 199 Cal. App. 4th 1336, 1355 (2011) (evidence of three incidents of gender-based, offensive conduct over span of several years was insufficient to establish pervasive harassment). Evidence to support a finding of harassment must establish that the harassing conduct was "'both objectively and subjectively offensive' … [meaning that] 'a plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail ... if a reasonable person ... considering all the circumstances, would not share the same perception.'" *Hughes v. Pair*, 46 Cal. 4th 1035, 1044 (2009) (quoting *Lyle*, 38 Cal. 4th at 284). The court must assess "allegations of a racially hostile workplace . . . from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." *McGinest,* 360 F.3d at 1115.

Plaintiff contends that LoGrasso subjected him to verbal abuse, humiliation and provocation on account of his national origin. Again, Plaintiff's evidence as to LoGrasso is limited to the ten occasions he says that LoGrasso asked him, "You are Pakistani, right?" or stated, "You Pakistani," along with one occasion, at a time Plaintiff could not recall, that LoGraso called him a "stupid Pakistani." (SUF 52, 53.) In addition to the evidence of LoGrasso's conduct, Plaintiff testified that he believed General Manager Gino Lazzara disliked him and told other managers to "pick[] on [him]…." (SUF 68.) Plaintiff testified in his deposition that Lazzara asked Plaintiff where he was from one time "approximately 12 to 13 years ago," but made no other comments about his race or national origin in the remaining 10-plus years they worked together. (SUF 54.) Plaintiff testified that he believes Lazzara dislikes Pakistanis, but offered no specific information to support that belief. (Plaintiff's Depo. 425:13-426:3; 501:19-502:11.) Finally, Plaintiff also avers that he complained to Low "about LoGrasso's continuing hostility, actions and conduct against me, [but] she never took any action to stop him." (Plaintiff Dec. ¶ 22.) Plaintiff never testified that his complaints to Low

United States District Court
Northern District of California

1   included his belief that LoGrasso, or anyone else, was mistreating him on account of his national

2   origin.

3          Even viewing the evidence in the light most favorable to Plaintiff, it is not enough for a

4   reasonable jury to find any national origin-based comments or acts by LoGrasso, or anyone else,

5   constituted severe or pervasive harassment on account of national origin.  What is more, there is no

6   evidence to suggest that the individuals who were involved with the decision to terminate Plaintiff's

7   employment — Low and Lazzara— made any disparaging comments related to Plaintiff's national

8   origin, much less of a type or frequency that would rise to the level of a hostile work environment.

9   Plaintiff's subjective perceptions that LoGrasso and Lazzara were picking on him because he was

10   Pakistani are not sufficient to establish that a reasonable person would find the circumstances

11   described here to be severe or pervasive enough to alter his working conditions.

12          Consequently, Defendants' motion for summary judgment as to Plaintiff's FEHA national

13   origin harassment claim is **GRANTED.**

14          **C.      FEHA Retaliation**

15          Hotel contends that Plaintiff cannot establish a *prima facie* case of retaliation because he did

16   not engage in protected activity, and, even if he had done so, he cannot show that such protected

17   activity was the cause of his termination, rather than the Hotel's good faith reliance on the results of

18   a thorough and impartial investigation.  Plaintiff argues that he complained to Low, the HR director

19   and to LoGrasso, but that discriminatory practices continued.  Plaintiff further argues that the "false"

20   investigation and his termination took place "within the year" of his complaints to Low, so there is a

21   temporal connection suggesting causation.

22          A plaintiff can establish a *prima facie* case of retaliation by showing that: (1) he engaged in a

23   protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link

24   between the protected activity and the adverse employment decision.  *Surrell v. Cal. Water Serv.*

25   *Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042

26   (2005).  An employee has engaged in a protected activity if he opposed discrimination or other

27   conduct made unlawful by FEHA.  Cal. Gov. Code § 12940(h).  An employee's comments, when

28   read in their totality, must oppose discrimination.  *Yanowitz,* 36 Cal. 4th at 1047.  On the other hand,

19

"an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct . . . where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination." *Id.* at 1046.

Plaintiff testified during his deposition that he complained to Low about LoGrasso on three occasions: once he complained about a scheduling issue, and twice he complained about LoGrasso's management style, claiming that LoGrasso was "harassing" him by "following" him around and criticizing his job performance.  (Supp. Burns Dec. Exh. 1, 182:1-183:3, 266:8-267:13, 273:6-23, 277:24-278:9).  Plaintiff's declaration states that he complained to Low about LoGrasso's "hostility" and "discriminatory actions."  (Plaintiff's Dec.¶¶ 56, 59.)

Again, there is no evidence that Plaintiff's complaints to Low stated anything more than that LoGrasso was hostile to him, not that LoGrasso's hostility was based upon his national origin. Moreover, a "simple assertion that an employer is [engaged in harassment], without more, is not statutorily protected opposition to an 'unlawful employment practice.'" *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983).  Simply using the word "harassment" is not enough to make the complaint one related to an unlawful employment practice.  While Plaintiff now declares that he complained about "discriminatory" actions, there is no evidence that he ever indicated to Low he believed LoGrasso (or anyone else) was discriminating against him based upon his national origin.  Accordingly, there is no evidence that Plaintiff engaged in a protected activity.

Further, leaving aside the lack evidence of protected conduct, Plaintiff cannot establish a causal connection between his complaints to Low and his termination, given the supervening fact of the May 26, 2009 incident with LoGrasso, and the Hotel's subsequent investigation of that incident. On May 26, 2009, LoGrasso suspended Plaintiff at Low and Cerny's direction. (SUF 9, 12, 13). Subsequently, Low conducted an investigation and obtained evidence from an independent witness that Plaintiff engaged in serious misconduct.  (SUF 17-31).  Low recommended that Lazzara terminate Plaintiff's employment, and Lazzara did so. (SUF 32-36).  A neutral third-party arbitrator affirmed the Hotel's decision, finding substantial evidence after three days of hearings on the matter and concluding that the Hotel had "just cause" to terminate Plaintiff's employment. (SUF 40-50).

United States District Court
Northern District of California

1  Plaintiff offers no evidence to support an inference that his termination was caused by anything other

2  than the finding that he violated policies against workplace violence on May 26, 2009.

3        Based upon the foregoing, the motion for summary judgment as to Plaintiff's FEHA

4  retaliation claim is **GRANTED.**

5        **D.**      **Section 1981 Claims**

6        Defendants are entitled to summary judgment as to Plaintiff's claim for alleged violations of

7  42 U.S.C. section 1981.  Like the FEHA claims above, Plaintiff cannot raise a triable issue of

8  material fact that Defendants subjected him to discrimination or harassment because of his national

9  origin, or retaliated against him for engaging in a protected activity.  Thus, for the reasons stated

10  above, the motion is **GRANTED** as to Plaintiff's Section 1981 claims.[11]

11  **V.**    **CONCLUSION**

12        Accordingly, the Motion for Summary Judgment is **GRANTED.**  The Clerk shall enter

13  judgment in favor of Defendants Intercontinental Hotels Group Resources, Inc. dba Holiday Inn,

14  Civic Center, Gino Lazzara, and Adriano LoGrasso as to all claims, terminate Docket No. 51, and

15  close the file.

16        **IT IS SO ORDERED**.

17  **Date: September 3, 2013**

18                  **YVONNE GONZALEZ ROGERS**

                **UNITED STATES DISTRICT COURT JUDGE**

---

[11] Given that the Court grants summary judgment as to all claims, the motion for summary adjudication of punitive damages is moot.